**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000798**
**25-OCT-2021**
**09:40 AM**
**Dkt. 92 SO**

NO. CAAP-19-0000798

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

PAPAKU LLC, a Hawaiʻi limited liability company,
Plaintiff/Counterclaim Defendant-Appellee,
v.
ROBERT G. STRAUB, Defendant/Counterclaimant/
Cross-Claimant-Appellant,
and
LOTTIELOIS KAPONO, Defendant/Cross-Defendant

ROBERT G. STRAUB, Third-Party Plaintiff,
v.
COUNTY OF MAUI and TEENA RASMUSSEN,
Third-Party Defendants

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 2CC191000113)

### SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Hiraoka and Wadsworth, JJ.)

Defendant/Counterclaimant/Cross-Claimant-Third-Party
Plaintiff-Appellant Robert G. **Straub** appeals from: **(1)** the **"Order
Granting Plaintiff's [sic] Papaku LLC's Motion for Summary
Judgment Against Robert G [sic] Straub"** entered by the Circuit
Court of the Second Circuit on November 5, 2019; and **(2)** the
**"Amended Judgment** Against Robert G [sic] Straub" entered on
February 24, 2020.[1] For the reasons explained below, we affirm.

---

[1]     The Honorable Peter T. Cahill presided.

On February 20, 2019, Plaintiff/Counterclaim Defendant-Appellee **Papaku** LLC filed a complaint in the District Court of the Second Circuit, Wailuku Division, against Straub and Defendant/Cross-Defendant Lottielois **Kapono**. Attached to the complaint were copies of: (1) a "Standard **Lease**" dated June 2, 2017, between Papaku and Straub, doing business as **Ultra Hawaii** Maui Embroidery and Trophies; and (2) an **"Assignment** and Assumption of Lease, Consent, and Amendment of Lease" between Papaku, Straub, and Kapono.

Papaku's complaint alleged that Straub and Kapono were in default of the Lease and the Assignment and owed $32,078.18 for unpaid rent and late charges. The Assignment, which had an effective date of November 1, 2017, stated that Straub agreed "to remain as personal guarantor on this lease for (1) one year."

Straub answered the complaint, counterclaimed against Papaku, cross-claimed against Kapono, and asserted a third-party complaint against the **County** of Maui and Teena **Rasmussen**.[2] Straub also demanded a jury trial. The County and Rasmussen answered the third-party complaint but asserted no claim against Straub.

Kapono failed to answer the complaint; her default was entered.

The district court ordered that Straub deposit $41,814 into the District Court Rental Trust Fund by March 13, 2019, or the district court would issue a writ of possession and judgment for possession of the leased premises. It does not appear that a deposit was made. On March 20, 2019, the district court issued a Judgment for Possession and a Writ of Possession in favor of

---

[2] Straub's third-party complaint alleged that he filed charges of discrimination with the federal Equal Employment Opportunity Commission and the Hawaiʻi Civil Rights Commission after being wrongfully terminated from employment by the County and Rasmussen. After he filed the charges, the County and Rasmussen allegedly retaliated by developing "policies to prohibit Straub's business, Ultra Hawaii, from doing business with most departments of the County, causing the business to experience substantial declines in revenue." As a result, Straub was allegedly unable to pay rent to Papaku, forced to sell Ultra Hawaii to Kapono "at a substantial discount[,]" and forced to guarantee the Assignment.

Papaku and against Straub and Kapono. No appeal was taken. On March 22, 2019, the remainder of the case was transferred to circuit court because of Straub's demand for jury trial.

In circuit court, Papaku and Straub each filed a motion for summary judgment. The record on appeal does not contain a transcript of the hearing on the cross-motions. On November 5, 2019, the circuit court entered the Order, which granted Papaku's motion and denied Straub's motion; ordered that judgment be entered in favor of Papaku and against Straub for $72,886.09;[3] and stated: "there being no just reason for delay, that the Court expressly directs that Judgment is hereby entered pursuant to Rule 54 and Rule 58 of the Hawaii [sic] Rules of Civil Procedure. This is a Final Judgment resolving all claims and issues between [Papaku] and [Straub]."

Straub's notice of appeal was filed on November 13, 2019. The circuit court entered the Judgment on January 29, 2020.[4] The circuit court entered the Amended Judgment on February 24, 2020.[5]

Straub's sole point of error contends that the circuit court erred by granting Papaku's motion for summary judgment because there existed a genuine issue of material fact. An appellate court reviews a trial court's grant or denial of summary judgment de novo. Joy A. McElroy, M.D., Inc. v. Maryl Grp., Inc., 107 Hawaiʻi 423, 429, 114 P.3d 929, 935 (App. 2005).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[3] Straub did not controvert Papaku's evidence of the amount of the debt owed under the Lease and the Assignment.

[4] A notice of appeal filed after announcement of a decision but before entry of a written judgment or order is deemed filed immediately after the time the judgment or order becomes final for the purpose of appeal. See Rule 4(a)(2) of the Hawaiʻi Rules of Appellate Procedure.

[5] On June 12, 2020, we temporarily remanded this case to the circuit court to supplement the record with the Amended Judgment, pursuant to Life of the Land v. Ariyoshi, 57 Haw. 249, 252, 553 P.2d 464, 466 (1976) and State v. Joshua, 141 Hawaiʻi 91, 93, 405 P.3d 527, 529 (2017).

> is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

Id. (citations omitted).

Papaku counters that there was no genuine issue of material fact because: there was no dispute about the contents of the Lease or the Assignment; a lease is reviewed under principles of contract law; and the construction and legal effect to be given a contract is a question of law freely reviewable by an appellate court. McElroy, 107 Hawai'i at 429, 114 P.3d at 935.

Papaku's motion for summary judgment was supported by a declaration from its real property manager. The declaration authenticated copies of the Lease and the Assignment. Straub did not controvert the authenticity or the content of the Lease or the Assignment.[6] Accordingly, the construction and legal effect to be given the Lease and the Assignment are questions of law that we review de novo. McElroy, 107 Hawai'i at 429, 114 P.3d at 935.

The Lease provides, in relevant part:

> [Papaku] . . . does hereby lease unto [Straub], and [Straub] does hereby lease from [Papaku], those certain . . . ("Premises") . . . upon the terms and conditions hereinafter set forth:
>
> 1.    SPECIFIC PROVISIONS:
>
>     . . . .

---

[6]    Straub's motion for summary judgment and opposition to Papaku's motion were supported by a declaration from Straub's attorney authenticating Papaku's notice to Kapono of her default and an accounting of payments due. Straub's reply memorandum included no declaration or exhibit.

Papaku's opposition to Straub's motion attached an unsigned declaration purporting to authenticate an email from Straub; because the declaration was unsigned, the circuit court should not have considered it when ruling on the cross-motions for summary judgment, and we do not consider it in our de novo review. Papaku did not file a reply memorandum on its own motion for summary judgment.

e.    The Term of this lease shall be Three (3) years, commencing on or before July 1, 2017 and ending on the [sic] June 30, 2020, unless sooner terminated as herein provided.

f.    (i) Monthly Base Rent: The monthly base rent shall be as follows:

[rent schedule]

g.    Amount of Security Deposit: $3,133.00

. . . .

23.    ASSIGNMENT AND SUBLETTING:

a.    [Straub] shall not assign . . . this lease . . . without the written consent of [Papaku] first had and obtained . . . .

. . . .

c.    ***Any consent to any assignment . . . which may be given by [Papaku] shall not constitute a . . . release of [Straub] of the full performance by it of the covenants contained in this lease***.

d.    Each assignee . . . shall assume and be deemed to have assumed this lease and shall be and remain liable jointly and severally with [Straub] for the payment of the rent, additional rent and adjustments of rent, and for the due performance of all the terms, covenants, conditions and agreements herein contained on [Straub]'s part to be performed for the term of this lease . . . .

47.    GUARANTY OF PERFORMANCE OF TENANT:

In consideration of the execution of this lease by [Papaku] and the leasing of the demised premises by [Papaku] to [Straub], each of the parties signing and executing this lease as a guarantor does hereby, jointly with any other guarantor and severally, unconditionally guarantee the full performance of each and every term, covenant, and condition of this lease to be kept and performed by [Straub], and if [Straub] shall at any time default in the performance of the terms, covenants, and conditions of this lease, said guarantors will pay to [Papaku], upon receipt of a written notice from [Papaku] of such default, the rent hereunder and all arrearages thereof and all damages that may arise as a consequence of any default by [Straub] under this lease. ***The guaranty of each guarantor under this Section and the liability of each such guarantor hereunder shall not be subject to any defenses of a guarantor or surety, it being understood, acknowledged, and agreed by each such guarantor that the liability of such guarantor shall be that of a principal obligor and that [Papaku] shall not be obligated to proceed against [Straub], any***

5

> ***other guarantor of the performance of [Straub] under
> this lease, or any other person, before proceeding
> against such guarantor.*** The guaranty of each
> guarantor shall be a continuing guaranty and the
> liability of any guarantor shall in no way be affected
> or diminished by an . . . amendment of this lease
> . . . or any disaffirmance or abandonment by [Straub].

(Emphasis added.)

The Lease was signed by Straub as "Tenant" and as "Guarantor." Exhibit C to the Lease was a **Personal Guaranty** that provided:

> In order to induce Papaku . . . to execute and enter
> into that certain Lease Agreement . . . for the ("Premises")
> . . . with Robert G [sic] Straub, . . . the undersigned,
> Robert G. Straub, personally ("Guarantor") hereby
> unconditionally guarantee(s) the full performance of and
> agrees to perform or cause to be performed each and all of
> the terms, covenants and conditions of the Lease Agreement
> on the part of Tenant to be kept and performed, including
> the payment of all rental, reimbursable and other amounts
> provided therein. Guarantor further agrees as follows:
>
> (1) That this Guaranty is an absolute and
> unconditional guaranty of payment and of
> performance without regard to the validity,
> regularity, or enforceability of any obligation
> of Tenant and regardless of any law, regulation,
> or decree now or hereafter in effect which might
> in any manner affect the obligations of Tenant,
> any rights of [Papaku], or cause or permit to be
> invoked any alteration of time, amount,
> currency, or manner of payment of any of the
> obligations hereby guaranteed. ***This Guaranty
> shall be enforceable against Guarantor without
> the necessity for any suit or proceedings on
> [Papaku]'s part of any kind or nature whatsoever
> against Tenant, and without the necessity of any
> notice of acceptance of this Guaranty or of any
> other notice or demand to which Guarantor might
> otherwise be entitled, all of which Guarantor
> hereby expressly waives***; and Guarantor hereby
> expressly agrees that the validity of this
> Guaranty and the obligations of Guarantor
> hereunder shall in nowise be terminated,
> affected, diminished, or impaired by reason of
> the assertion or the failure to assert by
> [Papaku] against Tenant of any of the rights or
> remedies reserved to [Papaku] pursuant to the
> provisions of the Lease Agreement;
>
> . . . .
>
> (3) The liability of Guarantor hereunder shall in no
> way be affected by . . . the assignment or
> transfer of the Lease Agreement by Tenant
> . . . ;

. . . .

(5)     That ***[Papaku] may at [Papaku]'s option bring a
        separate action or actions against Guarantor
        whether or not an action is brought against
        Tenant and whether or not Tenant is joined in
        any such action[.]***

(Emphasis added.)

The Assignment provided, in relevant part:

This ASSIGNMENT AND ASSUMPTION OF LEASE, CONSENT, AND
AMENDMENT OF LEASE (this "Agreement") is made by and among
Papaku LLC, a Hawaii Limited Liability Company,("Landlord"),
Robert G. Straub dba Ultra Hawaii Maui Embroidery as ("Old
Tenant" or "Assignor") and Lottielois Kapono, Personally,
("New Tenant" or "Assignee") for the lease of the premises
. . . described in that certain unrecorded lease dated
June 2, 2017, as may be amended (the "Lease").

[Straub] now intends to assign all of [his] right,
title and interest as tenant under the Lease to [Kapono].
[Kapono] intends to assume the obligations of the tenant
under the Lease from [Straub], such assignment and
assumption to be effective as of November 1, 2017 (the
"Effective Date").

[Papaku] has agreed to consent to the foregoing
assignment and assumption, effective on the Effective Date
subject to the terms and conditions herein.

. . . .

1.     <u>Assignment</u>.  Effective on [November 1, 2017],
[Straub] hereby transfers and assigns to [Kapono] all of
[Straub]'s right, title and interest in and to the Lease,
including without limitation any rights to any security
deposit or any other monies which now or hereafter are or
become due to the tenant from [Papaku].

2.     <u>Assumption</u>.  Effective on [November 1, 2017],
[Kapono] hereby assumes for the benefit of [Papaku] under
the Lease the performance of all the obligations of [Straub]
accruing on and after [November 1, 2017] and agrees to pay
all rent, additional rent, and other charges under the Lease
and agrees to, and shall fully perform, all the terms,
covenants, provisions and conditions of the Lease herein
assigned, all with the full force and effect as if [Kapono]
had signed the Lease originally as the named tenant therein,
[Kapono] hereby acknowledging and confirming that [she] has
reviewed and fully understands all the terms of the Lease.
. . .

3.     <u>Consent</u>.  Effective on [November 1, 2017],
[Papaku] hereby consents to the foregoing assignment and
assumption.  ***This consent shall not be construed (a) as a
release of [Straub]*** or [Kapono] ***from liability under the
Lease*** or (b) except as specifically provided in Section 6
below, to modify, waive or affect (i) any of the provisions,
covenants or conditions in the Lease; (ii) any of [Straub]'s

7

or [Kapono]'s obligations under the Lease; (iii) any rights or remedies of [Papaku] under the Lease or otherwise (or to enlarge or increase [Papaku]'s obligations or [Straub]'s or [Kapono]'s rights under the Lease or otherwise, all rights of [Papaku] under the Lease being expressly reserved)[.]

. . . .

5.      Amendments. Effective on [November 1, 2017], the Lease is hereby amended as follows:

a.      Tenant's Address for Notice. Tenant's addresses for notices from and after [November 1, 2017] shall be as follows:

(i)     [Kapono]'s Address for Notice:

32 Hoola Hou Street
Wailuku, HI 96793

(ii)  [Kapono] agrees to deposit $3,3133.00 as Security Deposit with [Papaku], for the full term of the lease.

(iii) [Papaku] will hold [Straub]'s existing Security Deposit $3,133.00 for the full term of the lease.

(iv)  [Kapono] agrees to be a Guarantor according to the Lease for the full term of the lease and all its conditions set forth.

(v)     *[Straub] agrees to remain as personal guarantor on this lease for (1) one year. Providing [Kapono] has remained in good standing with [Papaku] according to the terms and conditions of the entire Lease, [Papaku] shall than [sic] release [Straub] as Guarantor and return applicable security deposit.*

6.      Conformance. The provisions of the Lease are hereby amended to conform to the provisions of Section 5 above, but in all other respects, such provisions are to be and continue in full force and effect. This instrument is made on the express condition that nothing herein contained shall in any way be construed as affecting, impairing or waiving any rights of [Papaku] under the Lease, except as amended pursuant to this Agreement.

(Emphasis added.)

**1.     Straub's Liability as Guarantor Under the Lease and the Assignment**

**First,** Straub contends he "is released from his liability as a guarantor" because Papaku did not first attempt to

collect the debt from Kapono.  Straub cites <u>Lee v. Yano</u>, 93
Hawaiʻi 142, 997 P.2d 68 (App. 2000), in which we held:

> [A] guarantor does not promise the "same performance" as the
> principal debtor.  While a principal debtor promises to pay
> a specified amount, a guarantor promises to pay that amount
> only if it cannot be collected from the principal debtor.
> <u>See</u> <u>Schweitzer v. Fishel</u>, 13 Haw. 690, 693 (1901) (holding a
> guarantor and principal debtor were not "joint and several
> obligors.  They were severally parties to different
> contracts with the plaintiffs"). . . .
>
> . . . .
>
> . . . [T]he creditor has a duty to pursue collection from
> the debtor before pursuing collection from the guarantor.
> As noted in <u>Schweitzer</u>, <u>supra</u>, "under a contract of
> guaranty, the guarantor is released from liability to the
> extent that [the guarantor] is injured by the neglect of the
> creditor to press [the creditor's] claim with reasonable
> diligence against the principal debtor."  <u>Schweitzer</u>, 13
> Haw. at 693.

<u>Id.</u> at 147-48, 997 P.2d at 74.  Straub argues that Papaku's
failure to obtain a default judgment against Kapono, and to
exercise its creditors' remedies, before pursuing Straub under
the personal guaranty absolves him from liability as Kapono's
guarantor.

Straub's contention lacks merit.  "The respective
rights of the guarantor and the creditor are determined by
reference to the terms of the contract between them."  <u>McElroy</u>,
107 Hawaiʻi at 431, 114 P.3d at 937 (citation omitted).  In
<u>McElroy</u> we held that a guarantor of a lease waived the right to a
jury trial by signing the guaranty, which stated that the
guarantor "shall and do [sic] hereby waive trial by jury."  <u>Id.</u>

In this case, section 47 of the Lease constitutes a
waiver by Straub, as guarantor, of all "defenses of a guarantor
. . . , it being understood, acknowledged, and agreed by [Straub]
that the liability of [Straub] shall be that of a principal
obligor and that [Papaku] shall not be obligated to proceed
against Tenant, any other guarantor of the performance of Tenant
under this lease, or any other person, before proceeding against
[Straub]."  Similarly, the terms of the guaranty signed by Straub
(Exhibit C to the Lease) made it "enforceable against [Straub]

9

without the necessity for any suit or proceedings on [Papaku]'s part of any kind or nature whatsoever against Tenant[.]"  The Assignment made Kapono the tenant.  Accordingly, Papaku had the right to proceed directly against Straub, as guarantor, for relief from Kapono's default without first having to obtain a judgment against Kapono.

**Second**, Straub contends that the terms of the guaranty provisions in the Lease and the Amendment are ambiguous and should be construed against the drafter, Papaku.  The rule that ambiguities in a contract are construed against the drafter is not applied just because the contracting parties disagree about the terms of the contract and there is an assertion of ambiguity.  Ambiguity is found, and the rule is applied, "only when the contract taken as a whole[] is reasonably subject to differing interpretation."  Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203, 210, 684 P.2d 960, 964 (1984) (citation omitted).

The provision Straub contends is ambiguous is paragraph 5.a. of the Assignment.  It states:

> (v)   [Straub] agrees to remain as personal guarantor on this lease for (1) one year.  Providing [Kapono] has remained in good standing with [Papaku] according to the terms and conditions of the entire Lease, [Papaku] shall than [sic] release [Straub] as Guarantor and return applicable security deposit.

Straub argues, "what is ambiguous is when that one-year term begins."

There is no ambiguity.  Paragraph 5 of the Assignment states: "Effective on [November 1, 2017], the Lease is hereby amended as follows . . ."  Straub agreed to remain as personal guarantor for one year after the Assignment, until November 1, 2018.  If at that time Kapono remained in good standing with Papaku under the Lease, Papaku would release Straub as guarantor and return his security deposit (Kapono having paid her own security deposit under the Assignment).  Straub concedes that "on October 30, 2018, Kapono owed Papaku $17,044.37."  Because the condition precedent to Straub's release as a guarantor was not

satisfied, he remained a guarantor of his and Kapono's performance and was not entitled to a return of his security deposit.

Straub argues that he is at most a guarantor of $17,044.37 of Kapono's debt to Papaku — the amount she owed on November 1, 2018.  Straub misconstrues the unambiguous terms of the Assignment.  Because Kapono was not in good standing under the Lease at the end of the year following the Assignment, Papaku was not obligated to release Straub as a guarantor and, as a guarantor, Straub is liable for the entire amount of Kapono's default.

## 2.    Straub's Continuing Liability as Tenant Under the Lease

Straub contends that the Assignment was a novation that released him from liability as the tenant under the Lease.  "[A] discharge of a previous contractual duty is one of the essential elements of a novation."  Hawaii Builders Supply Co. v. Kaneta, 42 Haw. 111, 112, 1957 WL 10618, at **1 (1957).  The terms of the Lease and of the Assignment stated that Straub was not released from his contractual duties under the Lease, except that he would be released from liability as a guarantor if Kapono remained in good standing under the Assignment for one year.  As discussed above, the condition precedent to the guarantor release never occurred.  See Id. at 115, 1957 WL 10618, at **3 ("Where the new agreement is conditional, it is possible that the parties agreed that on the happening of a condition there should be a novation, and that until and unless the condition happened, the original obligation should remain in force.") (citations omitted).

The term of the Lease ended on June 30, 2020.  The Lease provided that if Papaku consented to Straub's assignment of his tenant's interest in the Lease, Papaku's consent "shall not constitute a . . . release of [Straub] of the full performance by it [sic] of the covenants contained in this lease."  In addition, Straub's assignee (Kapono) "shall assume and be deemed to have

assumed this lease and shall be and remain liable jointly and severally with [Straub] for the payment of the rent, additional rent and adjustments of rent, and for the due performance of all the terms, covenants, conditions and agreements herein contained on [Straub]'s part to be performed for the term of this lease[.]" Accordingly, after the Assignment, Straub continued to be liable to Papaku for his obligations under the Lease.

Section 3 of the Assignment provided that Papaku's consent "shall not be construed (a) as a release of [Straub] . . . from liability under the Lease or (b) except as specifically provided in Section 6 below, to modify, waive or affect (i) any of the provisions, covenants or conditions in the Lease[.]" Section 6 of the Assignment amended the Lease to conform to the provisions of Section 5 of the Assignment. Section 5 of the Assignment contained a conditional release of Straub's liability as guarantor. "[I]n all other respects, such provisions [of the Lease] are to be and continue in full force and effect." Under the plain language of the Lease and the Assignment, Straub continued to be liable as Tenant under the Lease until the Lease term ended on June 30, 2020.

For the foregoing reasons, the "Order Granting Plaintiff's [sic] Papaku LLC's Motion for Summary Judgment Against Robert G [sic] Straub" entered on November 5, 2019, and the "Amended Judgment Against Robert G [sic] Straub" entered on February 24, 2020, are affirmed.

DATED: Honolulu, Hawaiʻi, October 25, 2021.

On the brief:

Russell A. Kelm,
for Defendant/Counterclaimant/
Cross-Claimant-Third-Party
Plaintiff-Appellant
Robert G. Straub.

Thomas R. Cole,
for Plaintiff/Counterclaim
Defendant-Appellee Papaku LLC.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge